and others. Ms. Varner? Good morning. Good morning. Sarah Varner for Joshua Bowser. It was Mr. Bowser's burden at sentencing to show that he had accepted responsibility for his actions. There was at least one compelling piece of evidence that the district court had before it that was totally ignored by the district court. At the time that Mr. Bowser appeared for sentencing, he had entered pleas of guilty on ten substantive counts, and those counts comprised the racketeering acts which were charged by the government in the indictment. He pled guilty to mail fraud, guilty to collection by extortion, guilty to gambling, guilty to witness tampering, guilty to conspiracy to distribute cocaine, and guilty to distribution of cocaine. Over the government's objection, and because the district court ruled that a guilty plea to ten substantive counts and the avoidance of the expense of a five- to seven-week trial during a time of financial crisis, served the administration of justice, Mr. Bowser pled no low contendere on one count. The decision to give acceptance points is discretionary, and the district court may rely on the factors that are laid out in the sentencing guidelines or any other factor in the case. But at the very least, the district court must provide an explanation of the factors that it relied on. And in this case, the district court made no analysis. The district court simply relied upon the nature of the no low plea. The district court stated, because he neither admits nor disputes his guilt on counts one through his no low contendere plea, he has not taken responsibility or accepted responsibility for his actions. There is plenty of evidence on the record that Mr. Bowser did accept responsibility. The most compelling evidence are those pleas of guilty to the ten substantive counts. Additionally, Mr. Bowser presented to the district court that he was not, in fact, offered a plea agreement in this case, and he was told that he would not be given a plea agreement until he was the last man standing. So as this complicated case continued to wear on, Mr. Bowser still held out the hope for a plea, which explains why his plea came late, but it did come. Additionally, the district court did not mention one of the facts that the court found compelling to accept the no low plea in the first place, which was that this plea avoided a five to seven week trial, which would have been an expensive undergoing. The district court stated in this case a per se rule against acceptance of responsibility points on a no low contendere plea. No other circuit that's looked at the plea of no low contendere on acceptance points has said that a per se rule is appropriate. Instead, the courts have said that the fact that a no low plea was entered should just be one factor in the district court's analysis. And in this case, the district court didn't look at any other factor. Well, what was the purpose of the no low plea? Mr. Bowser, there was extensive social history entered on the record about Mr. Bowser. Mr. Bowser had, the district court called his past chaotic, traumatic, and neglectful. The government introduced evidence that Mr. Bowser did not want to admit that the motorcycle club that he was a part of was a criminal organization because he wanted to retain membership in the club. Even after his conviction, even after his sentence, he wanted to continue as an outlaw, right? He wanted to continue with the people who he viewed to be his family. Well, yeah, but how is that consistent with accepting responsibility? Um, that, Your Honor, I'm not, we're not indicating that that one factor should be determinative. What we're saying is that the district court relied only on the fact. Why isn't that enough? I mean, he's, you know, this is my family and so on. That doesn't sound like accepting some responsibility. What more do you need? He pled. Well, the fact is, Your Honor, that the district court ignored all the other facts in the case. Ten pleas of guilty were ignored by the district court and other circuits looking at the rule, the judge said, I find because he just won't admit guilt on this one element of one of the offenses, that that's inconsistent with acceptance. And we just asked that this court No, I don't understand. Why should the judge say, well, you accept some responsibility, but not all. So I'll give you, I should think the defendant would have to accept responsibility on all the charges before he gets a break. But you pick and choose and say, I'm guilty of this. We're not guilty of that. He did accept responsibility when he entered his plea of NOLO. And when he pled to the ten substantive... I don't understand that. If you enter a plea of NOLO contender because you don't want to accept responsibility, you say, well, I'm pleading guilty, you know, because I couldn't prevail, but I don't admit that I did anything wrong. Well, the district court obviously found Mr. Bowser's social history to be compelling in his case. When she gave Mr. Bowser his sentence, she mentioned his troubled childhood. And that is an explanation of that factor of why he would not admit one element of one charge. Didn't he also decline to identify his co-defendants or recognize his co-defendants as part of this criminal organization? The only thing he would not do, he admitted that he conspired, he just would not name names. The district court found that social history to be compelling when they sentenced Mr. Bowser, and that explains one element of one charge. So who did he conspire with if he wouldn't identify who they were? He just simply admitted the acts in those ten substantive counts. And he just said, I don't contest the fact that I'm also guilty of the RICO charge. It doesn't sound like acceptance of responsibility. It sounds like some sort of admission, but not an acceptance of responsibility. It's more than just admitting facts. Your Honor, we believe that the district court did not properly, didn't at least make a record on those other facts. We have ten substantive guilty pleas that weren't considered. All we have is consideration of one single fact in the case. For those reasons, we would ask that the court instruct the district court to consider that in remanding the case. Okay, thank you, Ms. Varner. Mr. Bose? Thank you, Your Honor. Good morning, and may it please the court. My name is Greg Bose, and I represent Frank Jordan in this appeal. Mr. Jordan asked this court to reverse his conviction because there was insufficient evidence to prove conspiracy. There were other evidentiary challenges, and he also asked that if there is no reversal on the sufficiency, that this court instruct the trial court to resentence him because the sentence enhancement had infirmities I'd like to talk about. There were issues I raised in the brief that I don't know that we have time to talk about today. I'd like to talk about the conspiracy charge and the sentencing enhancement, if that's all right. With regard to the conspiracy, there was evidence that Mr. Jordan purchased cocaine from Hector Nava Arradondo for about 25 weeks, 6 months, about once a week in quantity of about 3.5 grams. The 3.5 grams is consistent with personal use. There was evidence that the seller, Mr. Nava, knew that Mr. Jordan might resell the cocaine, but there's also evidence that Mr. Nava said, I don't care what he did, I just wanted my money. Didn't Nava testify that he got called by Jordan asking for drugs to sell? No, he didn't testify that. There was testimony describing what Mr. Nava's interpretation of Mr. Jordan's words were. The words out of Mr. Jordan's mouth were, I need another one, I need another biscuit, needed interpretation. Mr. Nava said he understood that to mean he wanted to buy another 8-ball or 3.5 grams. To sell though, right? Well, there's one other call. Out of several calls, only one of them has any suggestion that there's a customer on Mr. Jordan's part. And that's where he says, I need to call them and see if they're coming. Mr. Nava said, I interpreted that to mean he was checking with his customer to see if his customer was ready. That sounds like a reasonable interpretation of that conversation. And that's one of 25 they have, right? He did this every week for 25 weeks? He was discussing what the telephone calls were. There were something like 7 telephone calls and they were very short. And the important thing to know is that the words that come out of Mr. Jordan's mouth in these telephone calls... 25 intercepted calls. No, no, there's 25 transactions. There's a 6-month period of selling once a week. And so on this particular one, each time Mr. Nava is saying, this is what I thought he meant. What's important to say is, Joe, if you look exactly at the words that came out of Mr. Jordan's mouth, nothing suggests an agreement. Nothing suggests that he has a customer. There is a suggestion that there are other people involved. And the other important thing is that there's clear precedent that says even if Mr. Nava knew there was going to be a subsequent resell, that Mr. Jordan was going to resell those drugs, then that is insufficient to prove conspiracy. In the Brown case, this court did a comprehensive review of what it takes to determine sufficiency in a conspiracy case. And it said, if there's only a buyer relationship where Mr. Jordan's buying from Mr. Nava, that's insufficient. They said also, it's even insufficient if Mr. Nava knew Jordan might resell the drugs. And that's based on another case. And then it says what it would take, where would there be clear information that there's conspiracy. And that would be if there was sale on consignment. Consignment is different than sale on credit. And then the second thing that would show that there was a conspiracy, if you have a constellation of three things. Large quantities, multiple sales, and those sales on credit. So what happens in this case is we have the possibility of 25 sales in an amount of 3.5 grams, which Nava himself said he has used himself in as little as two days. He said that a person could use up 3.5 grams in one day. And we have this on a seven day cycle, where he's buying 3.5 grams once a week that could be used in one or two days. So the quantity is insufficient to meet that element. And then there's some evidence that Mr. Nava said, on two or three occasions I may have let him take the cocaine without giving me the money. He said that he was selling eight balls or 3.5 grams. He said that the price of that was $140. He said that he only did that once in terms of letting him take an eight ball for free. And on maybe one or two other occasions he might have let him front $60. So the worst we have out of this six month period is that he loaned him $260. And so I would suggest that the credit proof is insufficient. Or if it's not insufficient by itself, it's insufficient because there's not multiple sales that were on credit. There were as many as three. And so what we have is we don't have that constellation of three things that the Brown case says is necessary to prove the conspiracy. And what we're left with is when that's short, this court must look at the totality of the circumstances. And in the totality of circumstances you have things like Nava saying, I didn't care what he did. I just wanted my money. I didn't tell him how to sell it. I didn't tell him who to sell it to. I sold him at market rate, meaning he can't market up and make a profit. And then more importantly is the situation where we never have anyone saying that the words out of Mr. Jordan's mouth show that he agreed to be part of anything Nava was in. So the evidence is insufficient to show that there's a conspiracy. Now with regard to the sentence enhancement, the government filed a notice under Section 851 saying that Mr. Jordan had a prior felony conviction. By the way, on the conspiracy, did you get a buyer-seller instruction? Did Jordan get one? Yes. I would have challenged that in the brief. So the government filed the 851 notice. Mr. Jordan  must prove this beyond a reasonable doubt. And he also said that he wanted to challenge the Almendarez-Torres case. And we know that this court can't overrule that because it's Supreme Court precedent. But when you take into account what's going on with that circumstance, it becomes more important to make sure that if the judge is going to do that, that the judge must do it right. Congress said the prior conviction has to be proved beyond a reasonable doubt. In this case, the evidence didn't meet that standard. All they brought were three documents. The first document was a certified copy of a judgment showing a man named Frank Jordan had been convicted of a drug felony. The second document was a computer printout of the Marion County Court records that referred to the case number of the first document, had Frank Jordan as the name, and had a date of birth and a Social Security number. The third document was a police report, and it had Frank Jordan's name and it had a date of birth. And the second two documents at the time of the sentencing hearing were not certified. Mr. Jordan challenged that fact, but the trial judge allowed the government to get certified copies later in the day, which they did. Mr. Jordan also said that those two documents contained hearsay, and therefore were unreliable to support the proof. What's important here is the government did not bring other things that are things that help us believe beyond a reasonable standard have been met. Things like fingerprints from the prior case. What is your argument, that this is a different Frank Jordan, or what? Our argument is that the government has to prove it beyond a reasonable doubt, and they failed in that proof. I'm just asking what your theory is. We said that they have to show it. It's not Mr. Jordan's burden to put any evidence of. Look, listen to me. Do you think that it's a different Frank Jordan? Is that your argument? We don't know which Frank Jordan it is from the prior conviction because the government's proof failed. We demanded, as Mr. Jordan has a right under 851 and Section 841, that the government prove it. He has no burden under the Fifth Amendment to show that he is or is not that person. He has no burden to put on any evidence, and he did not. What proof would be sufficient is this comparison of fingerprints from both cases. What could be proof that's beyond a reasonable doubt is photographic evidence from the first case comparing to the Mr. Jordan standing in front of the trial judge in this case. What could be proof is an investigator who worked on the prior case. But if the government doesn't put on any evidence, it's much easier to find the government's proof to be beyond a reasonable doubt. What if they had just put the one document in, the judgment only? You see, there is a line here. There's a line here that says we have enough, and there's a line below which there should not be an enhancement. Our argument is that they didn't meet the burden this time. Just because the government can bring a document that says Frank Jordan's name on it... Right, but the Fifth Amendment does not require him to do anything. If a defendant does not...it's not necessarily that he testifies. If a defendant presents no evidence, it's going to be easier for a judge or jury to infer proof beyond a reasonable doubt by the government. Your Honor's correct. If we have the scales of justice and there's nothing on one side and something on the other, it's going to tip. So there is that. But I think there's still a degree of tipping that we have to examine. And the degree of tipping is the beyond a reasonable standard that the Congress imposed on this. There are other reasons in the briefs about why that enhancement was insufficient, and I see that my time is in rebuttal. Okay. Well, thank you, Mr. Bowes. Mr. Blackman? Good morning, and may it please the Court, I would just like to address two factual assertions that Mr. Bowes made that I disagree with. The first was the telephone conversations between Nava and Jordan that were intercepted and Mr. Nava's testimony about those conversations. The first thing that was ignored is that prior to playing the wiretap calls, and I'm just looking at pages 381 and 382 of the transcript, if the Court wants to go back to them and look at them, I had asked Mr. Nava how often over the six months did you supply cocaine to Jordan, so on and so forth. Then I asked him, how would you call when Frank Jordan needed cocaine? The answer is he would call me, question on the telephone, answer yes. Question, what did he typically say when he wanted cocaine? Answer, that he needed drugs to sell to a client, a customer that he had. So that was what Nava said typically happened during those telephone conversations that they had over six months. And then some specific telephone conversations were played, and I'm looking at page 394 of the transcript, and the call was played, and then I asked Mr. Nava about certain parts of the transcript of the conversation. And then line seven asked, do you want some? What did you mean by that? And then the answer is if he wanted more drugs. Then the next question was in line eight he said, meaning Jordan, yup, they just called me. Who did you understand him to be referring to by they? And Mr. Nava's answer was his customer had called him saying he wanted some. And there is another telephone. But the quantities are small, 3.5 grams, right? Correct, Your Honor. In each sale, right? Absolutely. And there was evidence that that could be a personal use amount, right? I would disagree. The testimony at trial was that the typical dosage unit would be 0.2 to 0.5 grams. But there's no question that if somebody had 3.5 grams of cocaine that maybe over a three or four day period they could consume that. And the market value, according to your opponent, Nava said he sold it to him at the market value. So it couldn't be priced up to his customers. I don't really understand the question. Well, did Nava price it so that it was already at the retail value? Hard to know. I don't think there was testimony about that. With retail values of cocaine there are always fluctuations. So it's hard to know if he was getting a good deal or not. There was also another conversation where Mr. Nava had testified that a deal was conducted outside of a bar instead of a residence because Mr. Nava had made it known to I think if you're looking at this in terms of, okay, is this the classic great buyer-seller thing where we have a kilo a week moving? It's not that. But I think the question is, is there an agreement that goes beyond just simply the spot market deliveries from Nava to Jordan? And the answer is yes. And the answer is yes in the same way that a conspiracy was found in the Lechuga case. Like Sam Pagan, if you pardon me butchering his name, that in this case the statements were made, I need some cocaine for my customer, will you give me some? Yes I do. So that shows a clear understanding and agreement that Jordan's going to deliver the cocaine to his customer. So there's an agreement about a deal going beyond the transfer of the cocaine to Mr. Jordan. The second thing I would like to raise when it comes down to the burden of proof for the A51 enhancement, both the judicial records that were introduced and the police reports for the investigation leading to the conviction established both the date and Social Security number of Mr. Jordan, the date of birth and Social Security number. Were there any photographs of him? There were not photographs introduced, Your Honor. In keeping in mind this conviction was maybe seven years before, I didn't introduce any. And then that date of birth and Social Security number that was present on both the judicial reports and the police report matched the date of pre-sentence investigative report. Since of course Social Security numbers are unique to an individual, it's my belief that we've met our burden of proof beyond a reasonable doubt. He had been interviewed by the probation officer for the preparation of the pre-sentence report? He was certainly interviewed. And it was available to him, so if that wasn't a Social Security number or date of birth, he could have objected to that? Absolutely. And he did not object to that? No, Your Honor. So with that, I don't, I know I have more time. If the court has any questions of me, I'm more than happy to answer them. If they don't, I'm happy to sit down. Okay, well thank you very much. Okay, thank you very much. So, Mr. Varner or Mr. Bowes, do you have anything further? I'll mostly leave the time here to Mr. Bowes. I just wanted to say, when the court asked me why isn't refusal to admit one simple element enough to deny acceptance points, I think the best answer to that is that would be this court stating that the nature of the plea of nolo contendere is sufficient, standing alone with nothing else to deny acceptance points. And that would put our circuit in conflict with every other circuit, and would be ignoring, based on those cases that I've read from every other circuit, stunning facts in this case, which I did not see. I guess the problem I have with that is that the reduction here is not for admission of guilt, it's for acceptance of responsibility, which all the cases say is something different, something more than just a mere admission of guilt. That's the problem I have with it. Yes, Your Honor, but for what the court said on the record was, simply on the basis of the plea of nolo, I find that you cannot have these points for acceptance of responsibility. Every other circuit has said it is one factor to be considered in the analysis, and if this court upholds the district court's ruling in this case, we will stand in conflict with every other circuit on that issue. So we would ask that you vacate and remand. Thank you, Your Honor. Just to respond to Mr. Blackington, the things he pointed out in terms of Mr. Nava's testimony of his interpretation of the calls, all they do is show that Mr. Nava knew that George Jordan might have resold the cocaine, and that's insufficient by itself. We have case law that the Brown decision has upheld on that. In terms of Judge Tinder's questions, the proof of the retail value in the evidence was there was an agent who said an 8-ball, 3.5 grams, would sell between $140 and $150 for that quantity. Mr. Nava said two things. One, he sold 8 balls for $140, and he said that he sold those 8 balls to Mr. Jordan for $140. With regard to the reference to the Luchuga case, I would suggest that the Luchuga case is much different on its facts than Mr. Jordan's case. There are higher quantities of drugs, more dollars involved in the credit sales, more repetition of the transactions, and more proof that Luchuga himself had agreed, not just somebody else was interpreting it. Also, the date of birth on the pre-sentence report, there were two dates of birth in the pre-sentence report. We did not challenge the pre-sentence report. We challenged the proof of the prior crime. Thank you.